IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| BERNARD WADE HUMPHRIES, <br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br> Defendant. | ) <br> ) <br> ) <br> ) Civil No. 3:15cv188 (MHL) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

On September 23, 2011, Bernard Wade Humphries ("Plaintiff") applied for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from coronary heart disease, diabetes type 1, high blood pressure, gout, chronic foot pain, high cholesterol, heart attacks and an enlarged heart, with an alleged onset date of September 23, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by failing to include all of Plaintiff's limitations in his residual functional capacity ("RFC") assessment and by not limiting Plaintiff to sedentary work. (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 12) at 19-24.) In the alternative, Plaintiff argues that the ALJ erred by failing to order an additional consultative evaluation before determining Plaintiff's RFC. (Pl.'s Mem. at 19-24.)

This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No.11) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On September 23, 2011, Plaintiff applied for SSI, with an alleged onset date of September 23, 2011.[2] (R. at 155-63, 171.) The SSA denied these claims initially on November 10, 2011, and upon reconsideration on December 15, 2011. (R. at 78, 91.) At Plaintiff's written request, the ALJ held a hearing on October 15, 2013. (R. at 24.) On October 24, 2013, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because jobs that Plaintiff could perform exist in significant numbers in the national economy. (R. at 16.) On January 27, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

[2] In his initial application for SSI, Plaintiff stated that his alleged onset date was January 8, 2009. (R. at 171.) Plaintiff amended the alleged onset date to September 23, 2011, during the October 15, 2013 hearing with the ALJ. (R. at 26.)

2

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether

the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On June 26, 2013, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert testified. (R. at 27-54.) On July 26, 2013, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 11-17.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 12-13). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 23, 2011. (R. at 13.) At step two, the ALJ found that Plaintiff had the severe impairments of coronary artery disease, hypertension, diabetes mellitus, gout, hyperlipidemia, sleep apnea and obesity. (R. at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with certain limitations. (R. at 14.) Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. (R. at 14.) Plaintiff could

never climb ladders, ropes or scaffolds. (R. at 14.) He could never work around hazards such as unprotected heights and dangerous machinery. (R. at 14.)

At step four, the ALJ found that Plaintiff could not perform his past work. (R. at 15.) At step five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy — a cashier with over one million positions in the national economy, a mail clerk with approximately 102,400 positions in the national economy and a laundry folder with approximately 39,750 positions in the national economy. (R. at 16-17.) Therefore, the ALJ found that Plaintiff did not qualify as disabled under the Act. (R. at 17.)

## IV.   ANALYSIS

Plaintiff, fifty-four years old at the time of this Report and Recommendation, previously worked as a construction laborer and a painter. (R. at 29, 181.) He applied for SSI, alleging disability from coronary heart disease, diabetes type 1, high blood pressure, gout, chronic foot pain, high cholesterol, heart attacks and an enlarged heart, with an alleged onset date of January 8, 2009, later amended to September 23, 2011. (R. at 171, 174.) Plaintiff argues that the ALJ erred by failing to include all of his limitations in the RFC assessment and by not limiting Plaintiff to sedentary work. (Pl.'s Mem. at 19-24.) In the alternative, Plaintiff argues that the ALJ erred by failing to obtain an additional consultation report before determining Plaintiff's RFC. (Pl.'s Mem. at 19-24.) For the reasons set forth below, the ALJ did not err in his decision.

**A. The ALJ properly assessed Plaintiff's RFC.**

Plaintiff argues that the ALJ erred by failing to include all of Plaintiff's limitations in the RFC assessment, specifically drowsiness, fatigue, dizziness and lightheadedness as reported by Plaintiff. (Pl's Mem. at 19.) Plaintiff further argues that the ALJ erred in finding that Plaintiff could perform light work, because his fatigue and dizziness would prevent him from meeting

light work's stand/walk requirement.[3] (Pl.'s Mem. at 22.) Defendant responds that substantial evidence supports the ALJ's RFC determination. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof. ("Def.'s Mem.") (ECF No. 13) at 15.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 416.945(b). Generally, the claimant is responsible for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant is not disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that are based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

---

[3] Under the SSA's regulations, light work requires "frequent lifting and carrying," which means "being on one's feet for up to two-thirds of the workday." 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10.

6

medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

The ALJ's failure to conduct a function-by-function analysis does not necessarily result in automatic remand. The Fourth Circuit rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Indeed, in light of *Mascio*, at least three district courts have found that in the absence of an explicit function-by-function analysis, the reviewing court must assess whether the ALJ's RFC analysis considered the relevant function, whether his decision provides a sufficient basis to review his conclusions and, ultimately, whether that decision is supported by substantial evidence in the record." *Ashby v. Colvin*, 2015 WL 1481625, *3 (S.D.W.Va. March 31, 2015) (holding that ALJ did not conduct explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that ALJ analyzed the relevant function); *see also Scruggs v. Colvin*, 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand because ALJ's decision did not address claimant's ability to complete tasks for a full workday); *Carver v. Colvin*, 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand because ALJ neglected to assess claimant's ability to walk or stand for a full workday).

After considering all of Plaintiff's physical and mental impairments, the ALJ found that Plaintiff maintained the RFC to perform light work with additional limitations, including no exposure to hazards. (R. at 14.) The ALJ concluded that no evidence showed any significant side effects of medication. (R. at 15.) The ALJ considered Plaintiff's complaints of dizziness and fatigue, but concluded that his treatment records did not reflect symptoms of severity or frequency that would prevent Plaintiff from performing at least light work. (R. at 15.) The ALJ found that Plaintiff should not work in hazardous environments due to his complaints of

dizziness and headaches from nitroglycerin. (R. at 15.) The ALJ made these conclusions based on objective medical evidence and self-reported activities. (R. at 14-15.) Therefore, the ALJ addressed relevant work-related functions and his decision provides a sufficient basis to review his conclusions.

Medical evidence supports the ALJ's RFC determination. On July 20, 2009, Plaintiff was hospitalized at Hunter Holmes McGuire VA Medical Center ("VAMC") for three days after developing a sharp chest pain. (R. at 258.) However, Plaintiff denied any lightheadedness during a physical examination. (R. at 258.) Kalpesh Patel, M.D. noted that Plaintiff's chest pain resolved upon his arrival to the medicine floor from the emergency department. (R. at 259.) Dr. Patel diagnosed Plaintiff with three-vessel coronary artery disease and discharged Plaintiff on July 23, 2009, in improved condition with no activity restriction. (R. at 258, 262.)

On March 21, 2011, Plaintiff was hospitalized at VAMC for recurring chest pain. (R. at 252-53.) Plaintiff again denied any blurry vision, dizziness or headache. (R. at 253.) Neil Lewis, M.D. noted that Plaintiff was alert, awake, oriented and not in acute distress. (R. at 254.) Dr. Lewis diagnosed unstable angina and discharged Plaintiff on March 23, 2011, in improved condition with no activity restriction. (R. at 252, 257.)

On April 11, 2011, Plaintiff saw Sonja Frederickson, M.D., a primary care physician at VAMC, for a check-up. (R. at 299.) Dr. Frederickson refilled medications for coronary artery disease and adjusted diabetes medications. (R. at 302-03.) A physical examination yielded unremarkable results. (R. at 301-02.) On August 15, 2011, Plaintiff returned to Dr. Frederickson for a check-up. (R. at 285-86.) A physical examination again showed normal results. (R. at 287.)

On January 23, 2012, Plaintiff returned to Dr. Frederickson. (R. at 365.) A physical examination and diabetic foot exam yielded normal results. (R. at 367-68.) On the same day, Ms. Velma Hickey, L.P.S. performed a health risk assessment. (R. at 369-70.) As a part of the dysphagia screening, Ms. Hickey noted that Plaintiff did not have decreased consciousness or orientation. (R. at 369.) During a functional screening, Plaintiff stated that he did not have a decrease in mobility or ability to complete daily living activities in the last six months. (R. at 369.)

On September 28, 2012, Plaintiff completed a cardiac stress test. (R. at 614.) Jonathan Potfay, M.D. concluded that the stress electrocardiogram test was non-diagnostic, because Plaintiff did not achieve the target heartrate. (R. at 615.) Dr. Potfay noted that Plaintiff demonstrated "reasonable functional capacity," achieving 10.1 METS.[4] (R. at 615.) Dr. Potfay recommended continuing medical therapy based on Plaintiff's exercise tolerance, the atypical nature of Plaintiff's chest pain and the lack of significant changes on nuclear imaging. (R. at 615-16.)

On July 1, 2013, Plaintiff presented to the VAMC emergency room with left-sided chest pain. (R. at 557.) Despite having stated that he had lightheadedness before coming to the emergency room, Plaintiff denied any dizziness or lightheadedness during a physical examination. (R. at 558, 585.) An initial physical examination showed unremarkable results. (R. at 517-18.) Plaintiff did not exhibit side effects from the medications. (R. at 519.) Plaintiff went through a non-imaging exercise stress testing and achieved 7.0 METS. (R. at 507.)

---

[4] METS stands for "metabolic equivalents." Physicians utilize METS to measure one's functional capacity. Maurice Jette *et al.*, *Metabolic Equivalents (METS) in Exercise Testing, Exercise Prescription and Evaluation of Functional Capacity*, 13 CLINICAL CARDIOLOGY 555, 555 (1990). For men, 6.0 to 7.9 METS are considered "heavy" energy expenditure, 8.0 to 9.0 "very heavy" and 10.0 "unduly heavy." *Id.* at 562.

9

Edward Lesnefsky, M.D. opined that suspicion for progressive angina was low. (R. at 506.) He noted that stress tests within the past year revealed low risks. (R. at 506.) Given Plaintiff's condition, Dr. Lesnefsky opined that Plaintiff could return home. (R. at 506.)

Plaintiff's own statements also support the ALJ's determination. On October 29, 2011, Plaintiff completed a function report. (R. at 195-202.) Plaintiff stated that he did not have any problem with personal care. (R. at 196.) He prepared his own meals every day for forty-five minutes to one hour. (R. at 197.) He could perform household chores, such as doing laundry and washing dishes. (R. at 197.) He went outside daily, and when he did, he walked or drove. (R. at 198.) He could go out without assistance from others. (R. at 198.) During the October 15, 2013 hearing with the ALJ, Plaintiff testified that he drove himself to the hearing for almost an hour. (R. at 29.)

On May 2, 2013, Karen Tisdel, Pharm.D., who worked with Plaintiff on diabetes care at VAMC, requested a dermatology consult on behalf of Plaintiff, because he had a small lesion on his left shoulder. (R. at 596.) Plaintiff stated to Ms. Tisdel that he lives in the country and walks in the woods every day. (R. at 596.) On May 29, 2013, Plaintiff saw Layshia Fowler, D.P.M. for pain in his left foot. (R. at 604.) He stated to Dr. Fowler that he did a lot of climbing of ladders and bending. (R. at 604.) On July 2, 2013, Plaintiff presented to the VAMC emergency room with chest pain. (R. at 585.) He stated that he drove himself to the emergency room, stopped by at a gas station and ate a candy bar. (R. at 585.)

State agency physicians' opinions also support the ALJ's determination. On November 7, 2011, Wyatt S. Beazley, III, M.D. reviewed Plaintiff's medical records. (R. at 55-62.) Dr. Beazley opined that Plaintiff could stand and/or walk (with normal breaks) for about six hours in an eight-hour workday. (R. at 59.) Dr. Beazley found that Plaintiff was not disabled. (R. at 61.)

On April 12, 2012, Tony Constant, M.D. reviewed Plaintiff's records. (R. at 64-72.) Dr. Constant also opined that Plaintiff could stand and/or walk for about six hours on an eight-hour workday. (R. at 69.) Dr. Constant opined that Plaintiff could perform a wide range of light work. (R. at 70.)

The ALJ considered Plaintiff's subjective complaints and sufficiently developed the record to explain the basis of his findings. Plaintiff's medical records, his own statements and opinions of state agency medical consultants support the ALJ's finding that Plaintiff could perform light work, despite his subjective complaints of fatigue, dizziness and lightheadedness. Therefore, the ALJ did not err by failing to include fatigue, dizziness and lightheadedness in his RFC assessment and substantial evidence supports his RFC findings.

### B. The ALJ did not fail to obtain an updated consultative examination.

In the alternative, Plaintiff argues that the ALJ erred by failing to order a consultative examination as required under 20 C.F.R. § 404.1419 to resolve Plaintiff's incomplete medical records. (Pl.'s Mem. at 23-24.) Defendant responds that the ALJ sufficiently developed the record to make a decision on Plaintiff's claim. (Def.'s Mem. at 18.)

Although the ALJ must consider the record as a whole, he has no duty to further develop the record. The ALJ must inquire into issues necessary for adequate development of the record, but "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While the ALJ must make a reasonable inquiry into a claim of disability, the ALJ has no duty to "go to inordinate lengths to develop a claimant's case." *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977). The Fourth Circuit has explained that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot

rely only on the evidence submitted by the claimant when the evidence is inadequate" for the purpose of determining whether the claimant is disabled. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Thus, the need to develop the record is triggered when there is insufficient or inconsistent evidence. 20 C.F.R. § 404.1520b. Discretion lies with the ALJ to determine whether to further develop the record or seek additional information from medical sources. 20 C.F.R. § 404.1520b. The ALJ determines the need for a consultative examination on an individual basis, in accordance with the provisions provided in 20 C.F.R. §§ 404.1519a-f, 416.919a-f.

Plaintiff asserts that there are many records after March 21, 2011, that showed his "uncontrollable" diabetes. (Pl.'s Mem. at 24.) However, Dr. Frederickson and Ms. Tisdel saw Plaintiff from April 2011 to March 2012, and their treatment records do not indicate that Plaintiff's diabetes was uncontrollable. Plaintiff's April 11 and June 13, 2011 appointments with Dr. Frederickson were unremarkable in terms of diabetes care. (R. at 297, 302-03.) During the August 15, 2011 appointment, Dr. Frederickson adjusted Plaintiff's medication after he reported having symptoms of hypoglycemia around lunchtime. (R. at 288-89.) On January 23, 2012, Dr. Frederickson noted that Plaintiff's blood sugar level remained above the goal, but attributed such fact to Plaintiff's failure to take aspart insulin with meals as directed. (R. at 368.)

On March 7, 2012, Plaintiff met with Ms. Tisdel for diabetes care. (R. at 362.) Plaintiff presented no complaints and denied hypoglycemia, hyperglycemia or other unusual problems. (R. at 362.) Ms. Tisdel noted that Plaintiff's diabetes control was not optimal, but that his blood pressure and lipids remained at goal. (R. at 364.) Ms. Tisdel also discussed the need for Plaintiff to take aspart with his meals. (R. at 362.) Dr. Frederickson's and Ms. Tisdel's treatment

records indicate that Plaintiff's diabetes actually stayed under control with medications, and that Plaintiff could have controlled it more effectively with better self-management.

Treatment records from other medical providers also show that the ALJ did not need to order an additional consultation report. Physical examinations with different medical providers yielded unremarkable results. (R. at 254-55, 287, 301-02, 558.) On September 28, 2012, Plaintiff achieved 10.1 METS during a cardiac stress test. (R. at 615.) During his hospitalization from July 2 to July 4, 2013, Plaintiff achieved 7.0 METS. (R. at 507.) Therefore, Plaintiff's medical records were consistent and sufficient, and the ALJ did not need to order a consultative examination.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No.11) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: December 31, 2015